UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

v.

(1) ALEX CASTRO,
(2) JASON KECHEGO and
(3) ADAM WRIGHT

        Defendant(s).
_____/

Crim. Case No. 19-20498

Paul D. Borman
United States District Judge

R. Steven Whalen
U.S. Magistrate Judge

# OPINION AND ORDER RE DEFENDANTS' PRETRIAL MITIGATION DISCOVERY REQUESTS RELEVANT TO SUBMISSIONS TO THE GOVERNMENT ON WHETHER TO SEEK THE DEATH PENALTY

(1) RULINGS,
(2) REQUIRING THE PARTIES TO MEET AND CONFER ON THE CLASSIFICATION/REDACTION ISSUES PRIOR TO JANUARY 22, 2020 AND THEREAFTER SUBMIT A FILING LISTING THE RESOLVED/UNRESOLVED ISSUES BY JANUARY 29, 2020, AND
(3) SETTING A HEARING ON DISCOVERY ISSUES ON FEBRUARY 5, 2020 AT 10:00 AM.

## BACKGROUND

The Court recognizes the tension between Fed. R. Crim. P. 16(a)(2):

Information Not Subject to Disclosure; 18 U.S.C. § 3592: Mitigating and

Aggravating Factors to be Considered in Determining Whether a Sentence of

1

Death is Justified; and Fed. R. Crim. P. 16(d): Regulating Discovery.  The Court, after examining those provisions, sets forth the following rulings:

Given the parties' Stipulation Regarding Discovery Classifications (ECF No. 58), in advance of a discovery hearing, the parties shall classify all discovery materials previously provided, and also classify the discovery materials the Court orders the Government to provide in this Order.

The Court adopts the following language from United States District Judge Ellen Huvelle's opinion in the death-penalty-eligible prosecution in *United States v. Karake*, 281 F. Supp. 2d 302, 306 (D.D.C. 2003):

> Given the charges that defendants confront, the Government shall be mindful that Rule 16 establishes "the minimum amount of discovery to which the parties are entitled.  It is not intended to limit the Judge's discretion to order broader discovery in appropriate cases."  Advisory Committee Note to Fed.R.Crim.P. 16, and disputes should be resolved in the defendant's favor, for "the language and the spirit of the Rule are designed to provide to a criminal defendant, in the interests of fairness, the widest possible opportunity to inspect and receive such materials in the possession of the government as may aid him in presenting his side of the case.  Similarly, the government should error on the side of disclosure when interpreting its *Brady/Giglio* obligations given the need for the utmost reliability in capital proceedings.  Finally, it is expected that the government will continue to disclose all *Brady* information promptly.

(citations omitted).

Footnote 3 on page 306 added:

> Since a trial date has yet to be set, and no final decision has been made regarding whether the government intends to seek the death penalty, the government will not be required, at this time, to identify its witnesses or to produce *Giglio* information. The Court does not, however, agree with the government's position that, under 18 U.S.C. § 3432, it can refuse to disclose its witnesses "until very close to trial."

(citations omitted).

Judge Huvelle concluded, in fn. 3, "since this issue can be addressed more fully at a later date, defendants' request for a witness list and *Giglio* information will be denied without prejudice to being renewed at a time closer to the trial date." *Id.* at Fn.3.

In the instant case, the Court notes that the Government has provided Defendants with a CD video of the principal incident at issue.

## RULINGS

I. Given the danger of intimidation of prisoner prosecution witnesses incarcerated at FCI Milan and other federal institutions, the Court finds that witness lists, unredacted witness statements, and full *Giglio* information should not be disclosed at this time. However, because redacted anonymous prisoner witness statements could provide important information about the crime alleged, defendants should be provided redacted anonymous statements under protective limitations at this stage of the proceedings.

3

The Court orders the Government to provide to Defendants anonymous inmate prosecution witness statements, subject to further redaction of information that could identify the witnesses.

II. The Court orders that the following Defendant discovery requests from the Government should be granted for this critical pretrial mitigation phase, subject to redaction:

(A) FBI and BOP investigation reports of the specific crimes charged in this indictment;

(B) BOP and FCI Milan documents relating to policy re placement of sex offenders within an Institution, and

(C) BOP and FCI Milan records of inmate assaults on FCI Milan sex offender inmates within three years of the instant incident.[1]

III. The Court rejects the Government's proposal to utilize a U.S. Attorney "Filter Team" to protect attorney-client information with regard to each defendant's prison calls. Government's Response ECF #51, PgID 786, c.37, c.38.

A recent decision of the United States Court of Appeals for the Fourth Circuit, *In re*: Search Warrant Issued June 13, 2019, 942 F.3d. 159, 173-83 (4th Cir.

---

[1] The fact that the Court provides this discovery at this pretrial mitigation phase does not indicate that the Court has concluded that it is admissible at trial.

2019) sets forth that Court's concern about using Government filter teams, citing with approval the Sixth Circuit decision in *In re Grand Jury Subpoenas*, 454 F.3d 511, 523 (6th Cir. 2006), which had held:

> Taint teams present inevitable, and reasonably foreseeable, risks to privilege, for they have been implicated in the past in leaks of confidential information to prosecutors. That is to say, the government taint team may have an interest in preserving privilege, but it also possesses a conflicting interest in pursuing the investigation, and, human nature being what it is, occasionally some taint-team attorneys will make mistakes or violate their ethical obligations. It is thus logical to suppose that taint teams pose a serious risk to holders of privilege and this supposition is substantiated by past experience.

The Sixth Circuit had reversed the District Court's approval of a "taint team," and in remanding, mandated that the District Court appoint a Special Master to deal with the privilege issue. *Id*. at 524. This Court adopts the Sixth Circuit's holding in *In re Grand Jury Subpoenas*, 454 F.3d at 523, and will appoint a Special Master after conferring with the parties.

IT IS SO ORDERED.

Dated: January 16, 2020				s/Paul D. Borman
						Paul D. Borman
						United States District Judge